UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| ANN CLARK, LTD., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Docket No. 1:14-cv-143 |
| | : | |
| R&M INTERNATIONAL, CORP., | : | |
| | : | |
| Defendants. | : | |
| | : | |

ORDER ON MOTION FOR PRELIMINARY INJUNCTION
(Doc. 5)

The parties to this action are manufacturers of cookie cutters. Plaintiff Ann Clark, Ltd. ("Ann Clark") claims Defendant R&M International Corp. ("R&M") has failed to designate the geographic origin of its cookie cutters in violation of the Lanham Act, 15 U.S.C. § 1125(a), the Vermont Consumer Protection Act, 9 V.S.A. § 2451 et seq., and Vermont common law of unfair competition. (Doc. 1 ¶ 1.) Pending is Ann Clark's motion for a preliminary injunction requiring R&M mark the foreign country of origin on its products, among other things. (Doc. 5.)

I.      Background

Ann Clark and R&M are competitors in the market for selling cookie cutters in the United States. (Doc. 1 ¶ 7.) Ann Clark, a Vermont corporation, manufactures cookie cutters in the United States. (Id. ¶¶ 4, 9.) R&M, a Pennsylvania corporation, manufactures cookie cutters in China. (Id. ¶¶ 5, 12.) R&M admits failing to mark certain of its cookie cutters "Made in China" (Id. ¶ 14; Doc. 11 ¶ 14), but asserts it has taken corrective action to ensure no unlabeled cookie cutter products exist in the marketplace. (Doc. 11 ¶ 14.)

Ann Clark alleges R&M's failure to mark some of its cookie cutters as "Made in China" affects prospective buyers' purchasing decisions (Doc. 1 ¶ 17) and has caused it to incur higher costs

due to consumer confusion (Id. ¶ 18).  R&M responds it is unaware of any instances of consumer confusion and asserts "American consumers often assume or otherwise expect inexpensive bakeware accessories, like the cookie cutter products offered for sale by R&M, are in fact produced overseas in countries like the People's Republic of China, and not the United States." (Doc. 21 at 6.)

Ann Clark asks the Court to enjoin R&M (1) from failing to mark the country of origin on its products; (2) from misrepresenting the country of origin of its products; (3) from engaging in any other unfair competition with Ann Clark; (4) from destroying any documents pertaining to the failure to mark the country of origin on its products; (5) to recall all improperly marked products from distributors and retailers; and (6) to file a report within 30 days describing its compliance with the injunction.  (Doc. 5 at 1-2.)

II.     Standard

A court may enter a preliminary injunction when the moving party can establish "(1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." Oneida Nation of New York v. Cuomo, 645 F.3d 154, 164 (2d Cir. 2011).  A preliminary injunction is an "extraordinary remedy and should not be routinely granted." Patton v. Dole, 806 F.2d 24, 28 (2d Cir. 1986).

III.    Discussion

    A.     Likelihood of Success on the Merits

The Lanham Act, 14 U.S.C. § 1125(a), provides a cause of action for false designation of origin.  See Res. Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc., 926 F.2d 134, 139 (2d Cir. 1991).  To state a claim for injunctive relief under the Lanham Act, a plaintiff must

"demonstrate a likelihood of deception or confusion on the part of the buying public caused by the false description or representation." PPX Enters. v. Audiofidelity Enters., Inc., 818 F.2d 266, 271 (2d Cir. 1987). "Whether likelihood of confusion exists is a matter of mixed fact and law reviewed de novo." Merriam-Webster, Inc. v. Random House, Inc., 35 F.3d 65, 70 (2d Cir. 1994).

Ann Clark argues there is a likelihood of confusion as a matter of law, relying on Alto Products Corp. v. Ratek Industries Ltd., No. 95 Civ. 3314, 1996 WL 497027 (S.D.N.Y. Sept. 3, 1996) ("Alto II"). In Alto II the court found "a consumer encountering goods with no marking as to country of origin will assume that they are American-made, thus creating a likelihood of confusion with goods which are, in fact, American-made." Id. at *5. That court held "failure to designate country of origin in violation of the Tariff Act violates § 43(a) of the Lanham Act as a matter of law." See id.

R&M argues the more recent decision in Milso Industries Corp. v. Nazzaro, No. 08 Civ. 1026, 2012 WL 3778978 (D. Conn. Aug. 30, 2012), should control. Milso rejected Alto II's per se rule, finding illogical a passive failure to label could result in liability because the Lanham Act imposes no affirmative duty of disclosure.[1] See id. at *19. The Milso opinion also criticizes Alto's per se rule as "inappropriately restrict[ing] the ability of the finder of fact to evaluate the particular circumstances of each case." Id. at *20. R&M also contends the assumptions underlying Alto are outdated, observing that at present countless products are manufactured abroad and imported into the United States such that consumers assume unlabeled products are manufactured in China. (Doc. 21 at 13.)

---

[1] An earlier decision in the Alto case reasons a violation of the Tariff Act eliminates the need for an affirmative misrepresentation, as "[t]he Tariff Act strongly suggests that a failure to designate a product as manufactured abroad may be misleading to the public and therefore a violation of the Lanham Act." Alto Prods. Corp. v. Tri Component Prods. Corp., No. 93 CIV. 3076, 1994 WL 689418, at *3 (S.D.N.Y. Dec. 8, 1994).

The Court finds the reasoning in Milso persuasive and declines to find R&M's failure to label its cookie cutters amounted to a per se violation of the Lanham Act.  As the Milso court observed, a per se rule unnecessarily restricts courts from considering the specific facts of the case.  See 2012 WL 3778978, at *20; see also Mugworld, Inc. v. G.G. Marck & Assocs., Inc., 563 F. Supp. 2d 659, 669 (E.D. Tex. 2007) ("At most, evidence of improper designation of origin is evidence in support of a Lanham Act 'false designation of origin' claim.").  Other courts have also criticized Alto II as misreading the Lanham Act.  See York Grp., Inc. v. Horizon Casket Grp., Inc., 459 F. Supp. 2d 567, 578 (S.D. Tex. 2006) (declining to adopt Alto II's per se rule); but see Baden Sports, Inc. v. Molten, No. C06-0210P, 2007 WL 703394, at *5 (W.D. Wash. Mar. 2, 2007) ("The Court agrees with the reasoning of . . . Alto and concludes that a failure to mark the country of origin is actionable under the Lanham Act.").

In the absence of Alto II's per se rule, the parties disagree as to whether R&M's failure to label in fact created a likelihood of confusion.  Ann Clark asserts in an affidavit that "R&M's failure to mark the foreign country of origin on its cookie cutter products has caused confusion and deceived buyers of cookie cutter products into believing that R&M's products' country of origin is the United States."  (Doc. 5 ¶ 16.)  Ann Clark attaches as an exhibit a purported example of consumer confusion.  (Doc. 5-6.)  In this example, an apparent consumer inquires on an Amazon.com comment section whether R&M cookie cutters are manufactured in the United States, and two posters state R&M products are made in Pennsylvania.  (Id.)  Although anecdotal evidence can be sufficient to make a showing of consumer confusion, see Jordache Enters., Inc. v. Levi Strauss & Co., 841 F. Supp. 506, 518 (S.D.N.Y. 1993) ("Evidence of actual confusion consists of (1) anecdotal evidence of confused consumers in the marketplace; and (2) consumer survey evidence."), the example in question only purports to demonstrate some consumers care about where cookie

4

cutters are manufactured, not that the absence of a country of origin label is confusing. Accordingly, because Ann Clark has not demonstrated a likelihood of consumer confusion, the Court does not find a likelihood it will succeed on the merits.

  B.  <u>Irreparable Harm</u>

  Even were the Court to adopt the <u>Alto II</u> rule or otherwise find Ann Clark likely to succeed on the merits, because Ann Clark will not suffer irreparable harm a preliminary injunction is not warranted here.

  Ann Clark relies on a dated opinion in an effort to satisfy the requirements for a preliminary injunction, arguing that if it can show a likelihood of consumer confusion, it has satisfied the irreparable harm requirement as a matter of law. <u>See</u> <u>Standard & Poor's Corp. v. Commodity Exch., Inc.</u>, 683 F.2d 704, 708 (2d Cir. 1982) ("In the preliminary injunction context [in a trademark case], a showing of likelihood of confusion as to source or sponsorship establishes . . . risk of irreparable harm."). More recently, however, the Second Circuit has explained courts "must not adopt a 'categorical' or 'general' rule or presume that the plaintiff will suffer irreparable harm," and must "actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the 'remedies available at law, such as monetary damages, are inadequate to compensate for that injury.'" <u>Salinger v. Colting</u>, 607 F.3d 68, 80 (2d Cir. 2010) (quoting <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006)); <u>Nordic Windpower USA, Inc. v. Jacksonville Energy Park, LLC</u>, No. 5:12-cv-5, 2012 WL 1388357, at *12 (D. Vt. Apr. 19, 2012) (same); <u>see also</u> <u>Marks Org., Inc. v. Joles</u>, 784 F. Supp. 2d 322, 334 (S.D.N.Y. 2011) ("[T]he presumption of irreparable injury [when likelihood of confusion is shown] is no longer in effect after <u>Salinger</u>."). Thus, even if Ann Clark could show a likelihood of consumer confusion, that showing would not <u>per se</u> establish irreparable harm.

Ann Clark argues it is subject to irreparable harm due to diverted sales.[2]  It is unclear, however, why the injury Ann Clark alleges could not be remedied with monetary damages were it to prevail.  As the Second Circuit has explained, "[g]enerally, [in cases] where we have found no irreparable harm, the alleged loss of goodwill was doubtful, and lost profits stemming from the inability to sell the . . . product could be compensated with money damages determined on the basis of past sales of that product and of current and expected future market conditions."  Tom Doherty Assoc's., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 38 (2d Cir. 1995).  Such is the case here, where Ann Clark alleges injury stemming from "diversion of its sales to Defendant, serious loss of revenues, profits, and market share."[3]  (Doc. 1 ¶ 24.)  Furthermore, it is unclear what present conduct by R&M presents a risk of future injury to Ann Clark.  Even if R&M's mislabeling previously diverted sales from Ann Clark, R&M appears to have undertaken substantial remedial measures to ensure its cookie cutters are now properly labeled.[4]

---

[2] Ann Clark asserts, through an affidavit submitted by its chief executive, that purchasers of cookie cutter products have stated they would rather buy American-made products than products made in China.  (Doc. 5-1 ¶ 18.)  It asserts consumers encountering R&M's unlabeled products will assume the products are American-made, and therefore R&M's failure to mark the country of origin on their products diverts sales from Ann Clark.  (Id. ¶ 19.)  In opposition, R&M argues Ann Clark has put forth no evidence sales have in fact been diverted to R&M, and if no sales have been diverted then there is no irreparable harm.  (Doc. 21 at 17.)

[3] Ann Clark later asserts in briefing that "Defendant's false marking is causing Plaintiff to incur higher costs, including higher marketing costs and other expenditures made by Plaintiff in order to prevent, correct, or mitigate the confusion or deception of prospective purchasers resulting from Defendant's conduct."  (Doc. 5 at 4.)

[4] By May 1, 2014, R&M had reached an agreement with its Chinese manufacturer to ensure all imported cookie cutters would be properly labeled.  (Doc. 21-1 ¶ 18.)  By July 7, 2014, R&M had hired nine new employees to assist with efforts to correct labeling on cookie cutters that had previously been imported and distributed.  (Doc. 21-1 ¶ 22.)  R&M's domestic efforts include requesting re-labeling of all cookie cutters placed with sales representatives (Doc. 21-1 ¶ 27); sending corrective labels to all customers who may have purchased unlabeled cookie cutters (Doc. 21-1 ¶ 28); and contacting Amazon.com and all third-party resellers on Amazon.com to correct inaccurate statements regarding country of origin of R&M cookie cutters (Doc. 21-1 ¶ 40).

IV.     Conclusion

In consideration of the foregoing, Ann Clark's motion for a preliminary injunction (Doc. 5) is DENIED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 29th day of December, 2014.

                                                       /s/ J. Garvan Murtha
                                                       J. Garvan Murtha
                                                       United States District Judge